Excuse me. Bruce Reinhardt on behalf of the World Food Association is the claimant in this matter. I would ask the court, first of all, if I could reserve five minutes for rebuttal. Also, I would like to apologize to the court. In our reply brief, our citations to the government's brief, we inadvertently used the CMECF page numbers rather than the page numbers on the actual pages, so they're off by five pages each. So I apologize that we got that wrong. Your Honors, I think the issue in this case is that the case proceeded on a theory of a fraud. The theory of forfeiture here was that a fraud was committed, which made the U.S. currency forfeitable. And the lower court, in focusing on the case, applied a contract theory, which is incorrect, because in order for the defendant property here to be forfeitable, there had to be an underlying crime. And the crime that was alleged was a fraud. And in order for there to be a fraud, the perpetrator had to have fraudulent specific intent. And there is no finding in the record as to that. And more importantly, the undisputed material facts in the case show there was no intent to defraud or, at worst, that there is a significant issue for a jury to decide whether. Did you – before I get too far into this, just so I can keep up with you, as I understand it, this was a civil forfeiture. That's correct, Your Honor. Not a criminal forfeiture. That's correct. So would then we look to the civil laws in order to make our determination here? What I think this Court has said repeatedly is that the law of forfeiture controls, but that the law of forfeiture has to apply the underlying substantive law. I understand. But when we're determining things like burden of proof and things such as that, because it's a civil forfeiture, is that the direction we should go rather than beyond a reasonable doubt if it were a criminal forfeiture? Absolutely, Your Honor. The burden – we don't dispute that – yes. Okay. Yes, we don't dispute that the district court applied the proper rules of law on burdens of proof here. The first burden is on the government to show by a preponderance of the evidence that the property is forfeit – subject to forfeiture. Assuming the government meets that burden, it's the claimant's obligation to show that they're an innocent owner. Our position in the first instance is the government didn't, on the undisputed facts, meet the first burden, because there was a genuine dispute of a material fact, and that fact was, did Henry Ford, the principal involved here, have specific intent to defraud? Counsel, wasn't the finder of fact entitled to rely upon the evidence presented of the use by Mr. Ford of, if I recall correctly, $400,000 or $500,000 for entirely personal reasons? He paid some of these legal bills, paid, I think, a bail bond, a bunch of other things. And there was other evidence that came in, I believe, that suggested that he would have been unable – that World Food would have been unable to buy alluvial gold in the sum of $1 million with that much of the money being gone. Well, Your Honor, I think the problem there is that assumes that the $1 million had to be used to buy gold. That's the material disputed issue here. Mr. Ford, and the record is clear, that Mr. Ford and World Food as the claimant took the position that was a fee to them as a broker on a transaction. That was not a deposit to buy gold. So if that's the case, how they choose to spend their money is their money to spend. Now, a – Who disputes that? You say it's a disputed issue. You came forward with evidence, I guess, that Huber and this other fellow said that it's theirs to use as they see fit, basically. Well, Your Honor, if I could, I'll analyze both sides of the issue, if I can, and explain to the Court where I think the dispute is. Right. The government relies upon three things. They rely upon the affidavit of Mr. Venable, which is found at page 375 of the record. They rely upon a letter that Mr. Horner writes saying that – to Mr. Ford saying, you've written to me and asked whether you can use it. You can't, which is after the fact. And they rely upon a hearsay three-way conversation between the case agent and Mr. Horner, where according to the agent, Mr. Horner says that money was supposed to be used to buy gold. On the other side, we have sworn interrogatory number three, which is at page 343 of the record, where World Food, through Mr. Ford, swears that they believe that money could be used for any purpose because it was a broker fee. So they didn't believe that's what the contract required. They could use the money for whatever they wanted to. We have the verified claim signed by Cecily Ford on behalf of World Food at page 496 of the record, where she swears that World Food was a broker and this was a broker fee. It was not a deposit for gold. We have the response to the request for admission number 18 at page 362 of the record, which is actually cited in the government statement of fact, in which Mr. Ford says that – sorry. Mr. Ford said they asked Mr. Ford to admit or deny that he was financially unable to refund the money, and the sworn response and verified response is, I didn't have to refund the money. It was mine to spend. So you've demonstrated that there's a factual dispute. Why did you move for summary judgment? We moved for summary judgment because we believe that if you look – okay. If you look at what Mr. Venable says, if you look at the facts on the government side, the government represents that what Mr. Venable says is the contract required a million dollars to be used as a deposit. That's not what Mr. Venable says. If you actually look at Mr. Venable's affidavit, what Mr. Venable says is in the language of the contract, it talks about a million – I'm paraphrasing. It talks about a million-dollar deposit. It doesn't. The contract is silent about a million dollars, completely silent. So in our view, Mr. Venable's affidavit simply says, as I read the contract, I thought that that's what the money could be used for, but he actually doesn't substantiate that. The only other evidence the other side has is Mr. Hoerner. Mr. Hoerner says, my understanding of the contract was that that's all he could use it for. Now, in another letter, he says, you can use it for anything you want to. So Mr. Hoerner is internally inconsistent. But again, whatever Mr. Hoerner thought and whatever Mr. Venable thought doesn't impute to Mr. Ford. These would be findings of fact, correct? Well, to the extent that the district court resolved them, yes, that's our position in granting a government summary judgment. And when it comes up on appeal, how do we treat findings of fact made by the trial court? Well, in a summary judgment setting, Your Honor, she's not allowed to make findings of fact on disputed facts. And that's our position here. These are, as Anderson v. Liberty Lobby says, it's a genuine issue of material fact, and she resolved it. And frankly, in her own opinion, she acknowledges that at least on one issue, she's resolving a disputed issue of fact. To the extent there are any findings that don't involve disputed findings, what is our test? If they're not disputed. Well, this Court reviews the entire matter de novo. What is it? I thought factual findings we test by clearly erroneous. Well, I think the Court is making the finding based on credibility or otherwise having heard from a witness. I think with no doubt. There's disputed facts here of what really happened, isn't there? Well, and that's why our position is there shouldn't be summary judgment in the first  Well, you see, you throw us a curveball by telling us that there are disputed facts, and yet below you claim there are no disputed facts. You're entitled to judgment as a matter of law. Why? By filing a motion for summary judgment. There are cross motions for summary judgment. Yes, Your Honor. And I think that I was in counsel below, so I don't, I can't represent exactly what the thought process was there. But I think what I said earlier, there are certainly disputed issues of fact as to whether the government is entitled to summary judgment based on what I've cited to the  Our position was even viewing the evidence in the light most favorable to the government, which is Mr. Venable's affidavit and the letters from Mr. Herner, that it's either inadmissible hearsay or it simply can't be imputed to Mr. Ford's state of mind. And so to the extent the issue is what did Mr. Ford believe, and Mr. Ford has asserted a good faith belief that he could use the money and World Food could use the money however it wanted because it was a fee, not a deposit, the government doesn't negate that. So that's why we felt summary judgment was appropriate for us. Further to Judge Silverman's comment, though, it sounds like what you're saying is that if the court construed the facts as you believed them below your side, that summary judgment would be appropriate. But since you lost, suddenly there is a dispute because your side didn't prevail and your version of the facts is different than the other side, and therefore there's a material issue of fact. Isn't that the curveball that Judge Silverman described? I hope not. That's not what we're trying to assert, Your Honor, in judgment. What we're saying is the government had a theory of the case, and their theory of the case was the contract required this money to be used as a deposit. Mr. Ford didn't use it. Therefore, World Food, there was a fraud here. Our position was whether the contract required that or not is not the dispositive question. The contract may very well require that, and a jury ultimately may find that the contract required it, but that's irrelevant to fraud. What's relevant to the fraud is what did Mr. Ford think the contract required. He could be wrong. He could be 100 percent wrong about what the contract requires, but if he genuinely in good faith believed it, there is no fraud. So our position was that to the extent the government was saying Mr. Ford had specific intent to defraud, there was at best disputed issues of fact, and that she couldn't grant summary judgment that way. To the extent we were saying he acted in good faith and there was no intent to defraud, there was no countervailing evidence on the other side, and we were entitled to judgment. I see you're down to five minutes as you requested. Thank you, Your Honor. Thank you. Good morning. May it please the Court. My name is Jeffrey Borup. I represent the United States of America, a respondent in this case. The government respectfully asks this Court to affirm for two reasons. Number one, a finding that the property at issue is more likely than not the proceeds of fraud is mandated by the record. And number two, the petitioner has failed to produce any competent admissible evidence that it is an innocent owner as required by law. Let me ask you about the first prong. Your theory is that this is the proceeds of a wire fraud, is that right? Correct. Has anyone been charged with wire fraud over this? No, Your Honor. Has anybody claimed, any victim come forward and said, I've been defrauded? Well, we do have statements in the record suggesting that the money had a purpose. That's not really what I asked you. What I asked you was, has anybody said, I am a victim of fraud? I've lost some money, someone's defrauded me. Yes, we have statements and sworn affidavits suggesting or stating that the money was to be used to purchase gold, and it was not. Okay, that's a different question. There may be a breach of contract. I understand, you know, you pay somebody to do a service or a commodity and you don't get performance, and that's what the contract laws are for. I'm asking you, and focusing on what I'm asking, has anyone said, I've been the victim of fraud? There have been statements in the record that the source of the funds came from a supposed Mr. Strauss. I guess we're not communicating with one another. Has anyone filed a complaint saying, I've been defrauded? No. Okay, well, if your theory is that this is the proceeds of wire fraud, you haven't charged anybody with wire fraud, nobody says I've been defrauded, I don't see how we get there from here. How do we conclude that this is, in fact, the proceeds of fraud as opposed to a breach of contract or something else? Well, a breach of contract, you could have two parties appear or come to the table with an intent to complete the deal. And then something can occur unexpectedly. They could change their mind. That's essentially a breach of contract. A fraud occurs when there's a promise to perform a future act with a present intention not to perform. Okay. Now, there's been two scenarios put forward by the petitioner on appeal in an effort to negate intent here. And that's, number one, Henry Ford just misread the terms of the contract. Or number two, the contract was amended. Who was defrauded? Who was defrauded here? Who was defrauded was the company IFG. Okay, and it's IFG. And they did not submit a claim in this case, no. And IFG sends a letter to Judge Bolton saying basically we have no beef here. Well, there were contradictory letters submitted by IFG, yes. And this is indicative of a fraud case. And the case on the record suggests that oftentimes this does occur. And the uninformed opinion of a victim carries no value. Who says he's a victim? I mean, where do you get that he's a victim? The victim says I wasn't victimized, so, I mean, where does the victim come from? Well, we do have a sworn statement by Special Agent Welch, as well as Aaron Venable, who was an employee of the company, who indicated what the purpose of the money was to be used for. I want to pin you down here. Your conception of this is that the victim is IAG? The victim initially was IFG. IFG. They made assertions that the actual source of the money came from an investor. Who's that? And that was Mr. Strauss. Has Strauss ever said he had been? The government was unable to locate Mr. Strauss, no. But what's important here is that this money came from somewhere, and the money had a purpose, and that purpose was not fulfilled. Counsel, like my colleague, I'm troubled. This is a most unusual case, most unusual case. I don't ever remember seeing another case where fraud is alleged and nobody's claiming fraud, and that a wire fraud is alleged and nobody's been charged. Why isn't opposing counsel correct that at least at this point there are significant material issues of fact about such basic things as, is there fraud? I know there are an issue of fraud. It's all over the place. I get that. And we get FTC cases and all kinds of things, and in every one that I've seen so far, somebody says, I've been defrauded. Here, nobody says they've been defrauded. I know there are some suggestions, but nobody's actually come forward. And you've got the defendant, Mr. Ford, saying this is basically a consulting fee, a finder's fee. It may be a complete lie, but it's a contradiction of a material point. You have a really strange contract, if you will, that doesn't clarify this. Why shouldn't this be sent back for a trial so that someone who can make a determination of this conflict can do so, rather than on a summary judgment basis? Well, again, whether or not there is an actual victim who comes forward does not mean that there is no victim here. Well, that may be true, but, again, I think you're kind of dancing around this like we were with Judge Silverman. Why shouldn't a trier of fact who is entitled to make the determination as opposed to a district judge who's not supposed to be fact-finding in the summary judgment context determine who's telling the truth? You may be absolutely right that a jury or the judge will say, you know, Mr. Ford is lying. He did all these things. It's all wrong, and then you've got your case. But here it seems, in an unusual factual and certainly procedural context, that you've got some really big issues that seem to have been resolved by Judge Bolton, I'm sure in good faith, but are allegedly very different than what may have occurred. So, again, this is not a breach of contract. This is a fraud case. Fraud occurs when there's a promise to perform a future act with a present intention not to perform, regardless of his interpretation. Excuse me. But the problem is that it's not clear what the promise was. It's not clear what the contractual obligation was. That's what's troubling. It's not clear. And therein lies perhaps the material issue of fact. What was the deal? The record's not clear, is it? If I may argue by analogy, if this contract paid Mr. Ford to run a marathon and he interpreted that to mean that he had to just jog around the block, well, if come race day he never got out of bed and the record shows that he never even had the ability to walk, let alone to jog or run a marathon, it's clear what his intent is from the get-go. And that was to commit fraud. That was to take the money and to do nothing, regardless of what his interpretation is, his so-called interpretation, which the government's argument is it is not in the record. Not once does he say, I believed I could use the money to do whatever I wanted. He says, legally, I was authorized to. All we had was a denial based upon a blunt reference to the face of the contract itself. No different than a denial based on case law. Any response has to be visibly based upon a personal recollection of an event. And here all we have, there's not a remembrance, not a memory. All we have is a cry for a legal interpretation based upon the language or lack thereof in a document. Now, regardless of his interpretation. You can't create a contract for people. Either they have a contract or they don't have a contract. And part of my problem is it's not clear in the record to me what the parties agreed. I get some scent of it. I can smell indicia of fraud. But I cannot tell what the elements of the contract are. I know you have a position as to what they are. But is the district judge empowered to make a determination between two conflicting views of what the parties intended? We had a position of what the contract means. And the district court found that the money was to be used to purchase gold because it was required to. All we have is a conclusory statement that it wasn't. And a citation to the face of the contract itself. Now, assuming that it was an advance fee, even still the intent to defraud persists. Whether it was to purchase gold or whether it was an advance fee, the district court found that neither World Food nor Henry Ford took any substantial step towards fulfillment of its obligations under the contract, regardless of what it was. Regardless of the obligations that the district court found. Well, the district court found, number one, that the obligation was to purchase gold. But also in the order in which that found in the written contract. I don't see it. Where is the obligation in the written contract that says that that money was to be used to purchase gold? Well, the contract itself has two parties. There's a buyer and a seller. And the seller, in no uncertain terms, is required to both sell and deliver alluvial gold. Now, the payment made is a conditional payment, and that's pursuant to Clause 15. Not a flat rate consulting fee, but a payment that could be adjusted upward or downward, depending on the quantity and quality of gold delivered. That's indicative of a purchase agreement. And the court agreed. And, frankly, the court had to agree. But also in the order, in response to the assertion that, well, the contract had been amended to allow the money to be used for whatever purpose, the court reiterated the government's position there that, well, regardless, no significant efforts were made to fulfill any obligation of any kind under this contract. We know that Henry Ford does have a familiarity with advance fee agreements, but he has no track record of ever following through on a promise. With respect to Africa, there's no proven ability whatsoever to secure any kind of deal of any kind. In fact, the record suggests one attempt by Mr. Ford to obtain gold in Africa, and it was another failure and, in fact, resulted in the loss of a substantial amount of money. We also know that Aaron Venable did go to Africa. He traveled to Africa, but this was essentially in vain, and his hands were tied. Without the money, he had no ability to secure a deal of any kind. And if there are any other questions I'd like to address, I think the point that this is not a contract case. It's not about the disruption of a contract or premature intervention by the government. It's about the ability of the United States to swiftly and efficiently remedy the effects of fraud. But the United States still has to comply with the law, doesn't it? Correct. That's the real question we're dealing with here is whether, based upon the facts presented in this case and the different views as to what the obligations were, even though there may be lots of indicia and you may win hands down if it were to go back for a trial, the reality is you still have to show what you have to show in order to get a summary judgment. And I know you feel strongly about this, and you may ultimately prove right, but the United States, as powerful as it is, still has to comply with the law. What we have shown is that he walked into that agreement with an intent to commit fraud. Now, he may have misinterpreted the terms of the contract or thought he was agreeing to something different. But regardless of what he was agreeing to, he had no ability to follow through on that agreement. If there are no further questions. I don't think so. Thank you, Mr. Boroff. Thank you. Mr. Reinhart, you had a few minutes left. Thank you. Let me address the last question or the last comment first, which is the ability to perform on the contract. If, as we've presented it, as Mr. Ford said and as the record evidence that I've cited shows, he believed that money was a fee, it was not a deposit for the gold, what did he have to do to perform on the contract? He had to send somebody to Africa to try to buy gold, if he was able to arrange for that. The money to pay for the gold was going to come from the buyer. The buyer was going to pay Mr. Ford for the gold, and Mr. Ford was then going to send that money through to the seller. So the fact that the $1 million may have been spent on other things doesn't affect whether he was trying to perform on the contract, even to the extent the contract is irrelevant. He did send Mr. Venable to Africa. The money would have come from a different source, and so the idea that he didn't try to perform on the contract I think is irrelevant but false nonetheless. The government talked about you need to have a present intention at the time you commit a fraud. That's exactly the issue here. What was Mr. Ford's intention? Mr. Ford has said, Mrs. Ford said in her verified claim that he believed and they believed and World Food believed that the money was a fee for services to be rendered. The government has not offered any evidence, credible, admissible evidence to rebut that. All the government has offered is Aaron Venable's affidavit which says the contract, I wanted to quote the exact language to the court because I thought it was particularly notable. Mr. Venable says, described in the contract was an agreed deposit of $1 million toward the purchase of 35 kilograms of alluvial gold. He doesn't say I have independent knowledge, I've been part of the negotiations, I have any personal knowledge of what this contract requires. He simply says if you look at the plain language of the contract, that's what it requires. That's not what the contract requires. So Mr. Venable is just wrong. So Mr. Venable's affidavit doesn't contradict Mr. Ford's assertion of what Mr. Ford believed. The only other evidence in the big stack of evidence, things that the government introduced, the only other evidence that they say shows that Mr. Ford and World Food had to use this money to buy gold, is Mr. Herner's hearsay through Agent Welch that in September he's telling Agent Welch, well, I never said he could use it for that purpose. At the same time that he's sending a letter saying, yes, you can. So that doesn't negate Mr. Ford's assertion. So it's our position that at least as to Mr. Ford's good faith belief as to what the contract allowed, the facts are undisputed and we should get summary judgment. Now, to the extent the Court doesn't believe that's correct, at a minimum, the case needs to go back down for a trial and let a jury decide those issues. One other point I wanted to just touch upon, if I could, Your Honor. Both in the brief and in Judge Bolton's order, there's a discussion about how the contract wasn't amended because it wasn't joined in writing, so Mr. Herner's letter that's favorable to World Food should be disregarded. I would note for the Court that the contract is signed on May 21st, and it says performance is due within four weeks of today. So performance was due on June 21st. The million-dollar deposit occurs in August. So to the extent the government's position is that the contract was never amended, where does this million-dollar payment come from? It's outside the scope of the contract as the government's trying to interpret it, which goes to our point that the contract is ambiguous. Mr. Ford had a good faith belief in what it said, and that he should be entitled at World Food, as the claimant, should be entitled to summary judgment. Unless the Court has questions, I'll concede the rest of my time. Thank you, gentlemen. The case just argued is submitted. We'll stand and recess for the morning.
judges: Wallace, Silverman, Smith